JOHN SHAW *v.* S. R. STRIBLING.

**Chancery Court — Jurisdiction — Fraud — Reformation of Contracts.**

A Court of Chancery has jurisdiction to reform a contract, where through fraud, the writing has not been made to speak the agreement of the parties.[1]

**Same — Account.**

While an account might be collected by law, yet if it depends upon a settlement which would be difficult for the jury to make, it is competent for the Chancery Court to take jurisdiction and make the settlement.[2]

Appellant Shaw owed Appellee Stribling $371, which was secured by a deed of trust on land in Itawamba county. In order to pay this indebtedness, Shaw sold the land to Asa Wallace for $550, and, by agreement with Stribling, had Asa Wallace, with J. D. and W. W. Wallace as sureties, to execute his note to Strib-

---

[1]

Equity has jurisdiction to entertain a bill to reform a written contract, by correcting a mistake in drawing it up, and at the same time to enforce a specific performance of the reformed agreement. But to authorize the court to reform the agreement, the evidence of the mistake must be clear and free from doubt. Mosby *v.* Wall, 1 Cush. 81; Harrington *v.* Harrington, 2 How, 701; Lauderdale *v.* Hallock, 7 S. & M. 622.

Equity will reform a written instrument which, through fraud, accident, or mistake in drafting it, does not express the actual contract. Norton *v.* Coley, 45 Miss. 125; Cummings *v.* Steele, 54 Miss. 647.

In such case parol evidence is admissible, and reformation may be had whether the agreement or writing be executed or not. Dunbar *v.* Newman, 46 Miss. 231; Ins. Co. *v.* Hoffheimer, 46 Miss. 645.

Where, by mutual mistake in the description, all land intended to be conveyed is not included, the grantee is, as against the grantor and those claiming under him with knowledge of the mistake, entitled to have the deed corrected; and this although the mistake was as to the legal sufficiency of

ling, in consideration of which Stribling was to surrender the note for $371 to Shaw, and execute his own note to Shaw for the balance of the purchase money from Wallace. Shaw executed the deed to the land to Asa Wallace, and received from Stribling the note to him for $371, but, instead of Stribling giving his own note for the balance absolutely, he executed a writing, promising to pay Shaw the balance when Wallace should pay him off. Shaw, being an ignorant man and unable to read or write, took this note on the statement from Stribling that it was his individual note. Shaw filed the bill in this case, setting up these facts, and alleging that the land note had been paid off by Asa Wallace; that the contract. delivered to him was fraudulently represented to him as being the individual note of S. R. Stribling to pay at all events, and that he would not have accepted it if he had known its true

the description.   Goodbar *v.* Dunn, 61 Miss. 618; Cummings *v.* Steele, 54 Miss. 647.

Equity will not reform a contract to make it express what the parties, but for a misapprehension, would have intended. The real question is, what did the parties intend at the time, informed as they were? Wise *v.* Brooks, 69 Miss. 891; 13 So. 836.

The writing must be accepted as embodying the agreement of the parties until it is shown that by accident, fraud, or mistake it omits something it should contain, or includes something that should be omitted. Dunbar *v.* Newman, 46 Miss. 231; Norton *v.* Coley, 45 Miss. 125.

One seeking reformation of a written instrument against the consent of another person in interest, on the ground of mistake, must show clearly and satisfactorily that the instrument as written fails to express the real agreement made by the parties. Wilczinski *v.* Railway Co., 66 Miss. 595; 6 So. 709; Wise *v.* Brooks, 69 Miss. 891; 13 So. 836; Hall *v.* Lafayette Co., 69 Miss. 529; 13 So. 38.

Courts will not make, and can only enforce, contracts. Where parties reject one sort of contract, and make another, though by mistake of law, equity will not relieve. But if, in putting an agreement into form, through inadvertence or mistake of law, it fails to express what the parties intended, equity will effectuate the real intent. Sureties are subject to the same rule as others in this respect. Hall *v.* Lafayette Co., 69 Miss. 529; 13 So. 38.

While relief from the consequences of an agreement entered into under mistake of law will not, for that reason alone, be granted, yet if a deed be executed to carry out an agreement, and, by reason of misapprehension of its legal effect, it fails to conform to the agreement actually made, equity will relieve. Sparks *v.* Pittman, 51 Miss. 511.

An instrument will not be cancelled for fraud of defendant in putting it in the form of an absolute deed, when complainants intended it as a contract to convey, where it appears that the complainants agreed to convey the land

character. He prayed for a decree reforming the agreement and its enforcement. A demurrer to this bill was sustained, and complainant appeals.

APPEALED from Chancery Court, Itawamba county, L. HAUGHTON, Chancellor.

Reversed and remanded, January 31, 1881.

*Attorneys for appellant, Blair & Clifton.*

*Attorney for appellee, J. A. Brown.*

Brief of Blair & Clifton:

The bill certainly presents a case that appeals directly and forcibly to the equitable interposition of a Court of Chancery. The prayer of the bill is inartificially drawn, and doubtless mis-

---

to defendant, that he has performed his part of the agreement, and that specific performance thereof would give him a deed exactly like that sought to be cancelled. Atkinson *v.* Sinnott, 67 Miss. 502; 7 So. 289.

In an action to cancel a contract for the construction of a railroad, the bill alleged hindrance by the wrongful conduct of the defendant, the company, and the engineer, and refusal to extend the time therefor, though immediate written notice was given, according to contract, and that the engineers were prejudiced towards the contractors and partial to defendant and wilfully and fraudulently made improper and underestimates of the work done. *Held,* that such allegations gave equity jurisdiction, and the contractors, though they had received payment on the estimates, were not precluded from complaining of fraud in them by the engineer, who, in such a case, must be treated as an umpire in award. Ga. P. Ry. Co. *v.* Brooks, 66 Miss. 583; 6 So. 467.

One who having a mere preexisting debt, with no promise of security therefor, procures the execution of a trust deed by the debtor under promise of future advances to him, which he does not then intend to make, procures such deed fraudulently. Watts *v.* Bonner, 66 Miss. 629; 6 So. 187.

Evidence held to show clearly that, in the conveyance of adjoining tracts, it was the intention of all the parties that the smaller tract should include the whole of a certain house, so as to authorize a court of equity to decree a reformation when it was found that, according to the descriptions in the conveyances, each tract included a part of the house. Hawkins *v.* Blair et al., 36 So. 246.

A deed to a plantation describing the same by its well known name, although reciting that it consisted of certain lands designated by government survey descriptions, aided by proof that the grantee, with the knowledge and consent

led the learned chancellor, but, under the general prayer for relief, if the bill shows on its face an equity, the court will overlook any special prayer inconsistent with the relief necessary, which the draftsman, in his misconception of the case, might have made, and grant such relief as is proper and equitable. The writing which, by appellee, was fraudulently substituted for his individual obligation, should be so reformed as to make it contain the contract between these parties. This principle, as well as the practice in enforcing and applying it, is well settled in our State— that a Court of Chancery will interpose to reform contracts in all cases "where, through fraud, mistake, or accident, the writing has not been made to speak the agreement of the parties." This is a case of fraud. 1 Story's Equity Jurisprudence, §§ 152, 153, 154; Simmons et al. *v.* North et al., 3 S. & M. 67; Pegues *v.* Mosby et al., 7 S. & M. 340; Dunbar et al. *v.* Newman, 46 Miss. 231; Phœnix Ins. Co. *v.* Hoffheimer, 46 Miss. 646; Willis *v.* Gattman, 53 Miss. 721; Cummings *v.* Steele, 54 Miss. 648.

of the grantor, entered into possession of the lands which had previously passed as a part of the plantation, warrants the conclusion that the grantor intended to convey all of said lands, and may be reformed so as to specifically include a part thereof not described therein by survey descriptions. Miles *v.* Miles, 84 Miss. 624; 37 So. 112.

Land fronting on a sound was leased, and thereafter the county board of supervisors granted the lessee the right to cultivate oysters within the limits of the front of the property, and subsequently the lessor conveyed the land to the lessee; the deed reserving "all littoral and aquatic rights appurtenant" to the land. *Held,* that the lessor was entitled to have the provision in the deed reformed in accordance with the actual intention of the parties that the lessor should have the exclusive right to the oysters, which intention was not shown by the language used. Barataria Canning Co. *v.* Ott et al., 41 So. 378.

One seeking to reform a deed must establish, practically to the exclusion of every other reasonable hypothesis, that mutual mistake, fraud, or error occurred in the making of the deed. Jones *v.* Jones, 41 Miss. 373.

2

In matters of accounting extending over a variety of transactions, the remedy for an account is deemed more ample and complete in a court of equity than in an action at law; and, besides, it tends to prevent a multiplicity of suits, and for this reason the jurisdiction is sustained. Watt *v.* Conger, 13 S. & M. 412.

Plaintiffs are not entitled to an accounting when the amount they should offer to pay can be exactly determined by calculation. Am. Land & Mort. Co. *v.* Jefferson, 69 Miss. 770; 12 So. 464.

The contract, when reformed, should be enforced by a specific performance of it. That appellee should be compelled to execute his note for the balance due appellant on the land, with interest from the date of the contract, September 6, 1875, up to date of performance. 2 Story's Eq., §§ 742, 751, 768, 769, 770 A, note 3; Daniel v. Frazer, 40 Miss. 507; Phœnix Ins. Co. v. Hoffheimer, 46 Miss. 654; Mosby et al., v. Wall et al., 23 Miss. 81; Carson v. Percy et al., 57 Miss. 97.

The remedy is not at law, inasmuch as we could not have proved a contract fastening liability upon appellee, different from the written contract, which we seek to have reformed and enforced. Parol testimony would have been inadmissible. 1 Greenleaf's evidence; Pegues v. Mosby et al., 7 S. & M. 340.

The court, having taken jurisdiction of the case to reform the contract and enforce a specific performance of it, can grant full and complete relief and render a personal decree. In the case of Phœnix Ins. Co. v. Hoffheimer, the contract was reformed on the ground of accident or mistake, the word "agent" having been omitted in the policy, and the court rendered a personal decree for the amount of complainant's demand, with interest.

This is a stronger case, inasmuch as we seek a reformation and specific performance of the contract on the ground of *fraud*. Again, if the contract is reformed, what question of fact could possibly arise that would require the decision of a jury? 1 Story's Equity, §§ 64 K, 68, 72.

The demurrer should have been overruled and appellant permitted to amend his bill.

Brief of J. A. Brown:

The facts stated in the bill, and admitted by the demurrer, present a good cause of action at law. Stribling, in consideration of Shaw's sale of land to Wallace, and the latter's payment of the purchase money to him, was to cancel the debt and mortgage, which Shaw had given him, and give Shaw his note for $172, the estimated difference between the value of the land and the face of the mortgage debt. Shaw conveyed to Wallace, who gave Stribling his note, secured by a trust deed on the land, for the purchase price, and Stribling cancelled his mortgage and gave Shaw his acknowledgment for $152, *payable after Wallace should pay him!* The italicized words show the alleged mistake in executing

the contract, which is sought to be re-executed by the bill. The bill alleges that Wallace *has paid* Stribling in full. It follows that Shaw can sue Stribling in *assumpsit,* either on the original contract or on the acknowledgment. In the most unfavorable light for the appellee, the case is that he agreed to execute his note, and has not done so. He has, however, given a written acknowledgment of the debt, and there is no obstacle to the plaintiff's recovery at law. It is not alleged that Stribling is insolvent or unable to respond in damages. Allegations as to usurious interest, etc., which Stribling has charged Wallace, have no bearing on the case, which presents the simple question whether the Chancery Court will compel one, who acknowledges the debt, to execute a promissory note upon the ground that he agreed to make such a note. When executed, the note is nothing but a promise to pay the debt, and Stribling's original contract is such a promise. No lien is reserved on the land, and the personal decree of the Chancery Court will be no better than the judgment of the Circuit Court. Shaw's claim is inequitable. The land is worth $200, for which sum it has since been sold. Shaw owed Stribling $371. It is evident that it was a very hard bargain for Stribling.

The variance between the way in which the contract was executed and the way in which it was agreed to be executed—between the contract and the execution thereof—is immaterial. The plaintiff has all the substantial benefits agreed to be given, and has a right of action at law, which is all the note would confer. Story Eq. Jur., § 151.

If, after reforming the contract, it will be so inequitable that equity will not decree its specific performance, its reformation will not be decreed. Story Eq. Jur., § 161.

The making of a note is immaterial. Its absence does not affect the plaintiff's remedy at law. It is a mere evidence of the debt. Unlike a mortgage, or insurance policy, or deed, it has no effect but to evidence a debt, which the defendant already acknowledges and promises to pay. A suit on the oral promise admitted is as good as one on the note.

The debt is due, the right of action has accrued, and a suit at law can be maintained for the money. A bill will not lie to compel the execution of a simple note to evidence a debt which is already due, and to recover which a suit can be maintained. No case, I think, can be found in which such a useless decree has

been made. An oral promise to pay money is as binding as a written one, and is easily sued on at law.

If it was an investment note, to run a long time, the necessity of perpetuating the evidence might be a ground for granting the relief; but this bill asks an execution of the note, and an immediate enforcement of the payment thereof. This debt is due, and the remedy at law for its collection is unembarrassed, and would not be improved by the execution of a note.

OPINION.—*Per curiam:*

The demurrer was improperly sustained. If appellee deceived and defrauded appellant by giving him a conditional instead of an absolute obligation to pay, as alleged, appellant was entitled to have the writing reformed and enforced as reformed. This could not be done except in a Court of Chancery.

If the written obligation was properly drawn, and appellee had become liable to pay appellant the sum specified by reason of the fact that he had collected it from Wallace, while it is true that this indebtedness might have been collected in a common law court, yet, as it depended upon a settlement to be made between appellee and Wallace, which it would be difficult for the jury to make in a court of law, and hence it was far better for all concerned that the investigation should take place in a Court of Chancery.

*Decree reversed,* demurrer overruled, and defendant required to answer within sixty days after mandate of this court is filed in court below.